# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| IAN WALLACE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case no. 4:18cv01859 PLC |
| PHARMA MEDICA RESEARCH, INC., et al., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Ian Wallace's motion for leave to file a third amended complaint ("motion to amend") [ECF No. 92].[1] Defendant Pharma Medica Research, Inc. ("Pharma") opposes the motion. No other Defendant filed a response to the motion.

### I. Background

Plaintiff filed this lawsuit in October 2018 against Pharma only seeking monetary relief for Pharma's alleged negligence. Specifically, Plaintiff alleged he acquired Hepatitis C from blood draws he received between March 23, 2016, and June 14, 2016, at Pharma's facility in St. Charles, Missouri,[2] where Plaintiff participated in two medical studies. Plaintiff's allegations establish there is complete diversity of citizenship[3] and the amount in controversy is over $75,000 exclusive of interest and costs. This Court, therefore, has diversity jurisdiction over this action.

---

[1] The Court will address the other pending motions (Defendant Hikma Labs, Inc.'s motion for summary judgment [ECF No. 94], Plaintiff's motion to compel [ECF No. 98], and Defendants' motion to strike testimony and opinions of Dr. Harry Hull [ECF No. 102]) by separate order after the time for filing responses and replies has expired.

[2] The record discloses that Pharma's St. Charles facility has been closed since about mid-2019.

[3] Plaintiff is a citizen of Illinois, Pharma is a citizen of Canada only, and the other four Defendants are citizens of Delaware, England, Nevada, New Jersey and Ohio.

After conferring with counsel for Plaintiff and Pharma, the Court set a deadline of April 4, 2019, for the filing of amended pleadings.  The parties began to engage in discovery efforts and, as a result of certain information Pharma disclosed in July 2019, Plaintiff sought, without objection, and obtained leave to file an amended complaint adding as four Defendants the medical studies' sponsors.

Plaintiff's three-count amended complaint sought monetary relief based on the alleged negligence of Pharma (Count I) and the four other Defendants:   Tris Pharma, Inc. ("TPI") (Count II); and Roxane Laboratories, Inc. ("RLI"), Hikma Labs, Inc. ("HLI"), and West-Ward Columbus, Inc. ("WCI") (Count III).  After all Defendants filed answers to the amended complaint, the Court conducted a second conference with counsel and entered a Second CMO.  In the Second CMO the Court set a deadline of November 6, 2019, for the joinder of parties and amendment of pleadings.

On November 6, 2019, Plaintiff filed a motion to file a six-count second amended complaint [ECF No. 73] against the five Defendants.  Specifically, Plaintiff sought to add a claim based on *res ipsa loquitur* against each Defendant because some of the blood draws occurred while Plaintiff was asleep and he is unable to "pinpoint the [Hepatitis C] infection to a specific needle stick."  After the period for filing a response expired and no Defendant opposed the motion, the Court granted Plaintiff's unopposed motion to file a second amended complaint.  The second amended complaint consists of the three original negligence claims (Counts I through III) and three *res ipsa loquitur* claims (Counts IV through VI) against the five Defendants.

In the Second CMO the Court also set a deadline of April 13, 2020, for the completion of discovery.  In late February 2020, Plaintiff supplemented his prior disclosures by providing the identity of two treating physicians, a hepatologist and a rheumatologist, who may testify at trial.  Due to Plaintiff's disclosure of the two treating physicians, Pharma filed a motion to extend the

discovery deadline from April 13, 2020, to July 13, 2020.  Pharma asserted Plaintiff had not yet authorized Pharma's access to Plaintiff's medical records and Pharma wanted an opportunity to review those records before deciding whether to depose either the hepatologist or the rheumatologist.  Plaintiff did not object to Pharma's requested extension of the discovery deadline.

Concluding that the requested discovery deadline extension would impact other deadlines as well as the trial date established by the Second CMO,[4] the Court granted the unopposed motion, gave Plaintiff a deadline for providing Defendants' counsel with access to his medical records, and re-set other deadlines and the trial date that were impacted by the new discovery deadline.  See Order, filed Mar. 24, 2020 [ECF No. 87].  At present, the trial date is May 10, 2021,[5] and other pertinent deadlines include:  (1) July 27, 2020, to September 28, 2020, as the period for the parties' alternative dispute resolution ("ADR") efforts, with August 7, 2020, set as the deadline for filing the notice of the date, time, and location of the initial ADR conference;[6] and (2) October 13, 2020, as the date by which the parties may file any substantive motion, with specified due dates for filing response and reply briefs after that date.  Id. at 3-4.  In its Order granting the unopposed extension of the discovery deadline, the Court expressly stated that "[a]ll other terms and provisions of the Second CMO, as well as the Order Referring Case to ADR [ECF No. 18], remain in full force and effect."  Order, filed Mar. 24, 2020 [ECF No. 87 at 4].  Based on its terms, the Order extending

---

[4] In the Second CMO [ECF No. 63] the Court had also set:  (1) April 24, 2020, to June 23, 2020, as the period for the parties' Alternative Dispute Resolution ("ADR") efforts; (2) July 2, 2020, as the deadline for the filing of any dispositive motion, with later dates specified as the deadlines for filing of responses and replies regarding any dispositive motion; and (4) November 30, 2020, as the date when the jury trial would begin.

[5] When granting Pharma's unopposed request for an extension of the discovery deadline, the Court set the jury trial to begin on April 26, 2021.  Order, filed Mar. 23, 2020 [ECF No. 87].  Due to a subsequent conflict that arose with the Court's calendar for 2021, the Court re-set the jury trial for May 10, 2021.  Order, filed July 21, 2020 [ECF No. 100].

[6] Earlier, the parties agreed on a neutral for their ADR efforts.

the discovery deadline until July 13, 2020, did not change the November 6, 2019, deadline for filing amended pleadings.

In June 2020 Plaintiff filed his pending motion to amend. Plaintiff "seeks . . . leave to add a single count (Count VII) to his [second amended] Complaint to make a claim against [Pharma only] for outrageous conduct and seek aggravated damages [from Pharma only] under Missouri law. No changes to Counts I-VI are made." Id. para. 2. In support of his motion, Plaintiff states "[t]hat leave to amend pleadings is to be freely given pursuant to F[ed]. R. Civ. P. Rule 15(a)(2)." Id. para. 4.

Plaintiff attached his proposed third amended complaint to his motion to amend [ECF No. 92-1]. For Count VII, which Plaintiff titles as "Outrage – *Wallace vs. P[harma]*,"[7] Plaintiff incorporated paragraphs 1 through 11 of Count I (the negligence claim against Pharma) and paragraphs 1 through 8 of Count IV (the *res ipsa loquitur* claim against Pharma) and alleges:

> 20.   That at all times relevant hereto [Pharma] was aware that a failure to follow safe methods of working with human blood such as at issue could subject study participa[n]t[]s and others to a high risk of contracting any one of a number of highly dangerous, potentially deadly and infectious diseases such as hepatitis among other dangerous blood borne pathogenic diseases. [Pharma] knew that any attempt to cut corners to save costs or to expedite blood draws would increase the risk that participants and/or those who draw blood would contact [sic]. [Pharma] knew that its study sponsors were concerned for the safety of the study participants and were concerned for their own financial well[-]being in the event a study participant became ill or died due to improper blood study techniques and, for that reason, demanded by contract [that Pharma] procure liability insurance for the benefit of the study participants who might become ill from blood borne pathogens introduced into the systems during [Pharma] controlled studies. [Pharma] further knew that it was required to keep records of its participants and report any instance of a participant, employee and/or applicant contracting or testing positive for hepatitis C. [Pharma] further knew that if a study participant experienced

---

[7] The introductory paragraph actually states that Plaintiff pursues the cause of action against TPI, one of the other four Defendants in this case. Despite that statement, the Court understands, based on the title of Count VII in the proposed third amended complaint and the allegations in that Count, that Plaintiff pursues this claim against Pharma only.

symptoms of hepatitis C immediate medical care was required and any delays in the administration of such care could be detrimental to and/or deadly for the patient. [Pharma] further knew its study groups were videotaped and such videotapes would be valuable evidence in the event a study participant claimed he/she was exposed to a blood borne pathogen while in [Pharma]'s studies.

21.     [Pharma] knew Plaintiff became ill, reported symptoms consistent with hepatitis C infection, asserted such occurred while in [Pharma]'s study group[,] and was in need of immediate medical treatment.

22.     [Pharma], armed with all of the above knowledge, in its quest to save money, avoid/reduce liability exposure, minimize its financial responsibility and/or make Plaintiff's ability to recover medically and/or financially more difficult committed one or more of the following[] outrageous acts thereby placing profits above safety and above human decency:

    a)     refused to authorize emergency medical care at a nearby hospital but instead demanded Plaintiff drive more than an hour to report to [Pharma] for examination;

    b)     drew blood from sleeping participants in a dark, unlighted room;

    c)     pre-assembled blood draw kits and placed them into large buckets to expedi[]te blood draws contrary to standard protocols requiring assembly in the presence of patients;

    d)     permitted blood[-]soaked cotton balls to be placed in cups on the tables where participants lived [sic]. The cups were identical to cups the participants drank from;

    e)     hired persons to draw blood who had little or no experience with blood draws;

    f)     utilized "unpaid" interns to draw blood even though they had no experience with blood draws;

    g)     procured cheap insurance that excluded coverage for claims in which persons asserted injury due to blood borne pathogens;

    h)     failed to preserve video footage of the study groups in which Plaintiff was a participant after learning Plaintiff claimed he contracted hepatitis C;

    i)     failed to preserve in a reproducible format reports of others who had tested positive for hepatitis C while working for [Pharma] as an employee, intern, participant, or applicant;

>    j)   prohibited study participants from taking photos and/or videos of unsafe practices of [Pharma];
>
>    k)   refused to accept relatives of Plaintiff in future study groups because [Pharma] feared they might procure evidence of [Pharma]'s unsafe practices;
>
>    I)   transferred to "archives" and claimed it cannot produce records highly relevant to Plaintiff's claims;
>
>    m)   traveled to [the hospital Plaintiff went to] and[,] without Plaintiff's permission or authorization, spoke with Plaintiff's emergency medical providers about Plaintiff's medical condition upon learning Plaintiff went [to a hospital] for emergency medical treatment despite [Pharma]'s instruction to . . . Plaintiff to the contrary[;]
>
>    n)   misrepresented facts by falsely claiming they had repeatedly telephoned Plaintiff upon learning of his hepatitis C consistent symptoms[;]
>
>    o)   failed to contact Plaintiff's emergency contact upon learning Plaintiff had symptoms consistent with hepatitis C; and/or
>
>    p)   falsely accused Plaintiff of being an illegal drug user.
>
> 23.  That the above outrageous acts by [Pharma] warrant the imposition of aggravated damages.
>
> WHEREFORE, Plaintiff prays for a judgment in his favor [and against Pharma] for an amount in excess of $75,000 in compensatory damages and for aggravated damages and for such other and further relie[f] as deemed just.

Pl.'s proposed third am. compl. at 10-12 [ECF No. 92-1].

Pharma opposes Plaintiff's motion to file a third amended complaint on the ground Plaintiff has not satisfied the requirements of Rule 16(b)(4), which, Pharma argues, apply because Plaintiff filed his motion to amend after the deadline for amending pleadings. Pharma specifically asserts (1) Plaintiff has not established the "good cause" required by Rule 16(b)(4) and (2) Pharma will be "extremely prejudiced" by the addition of the new claim against Pharma.

In his reply, Plaintiff contends he filed his motion to amend after the November 6, 2019 deadline for amending pleadings because it was not until late May and June 2020 that Pharma produced information supporting the new claim. Plaintiff argues the material recently produced by Pharma supports allegations in the new claim in the proposed third amended complaint.

## II. Discussion

A. Standard

In a diversity case, a federal court applies "federal law to matters of procedure, and state law to substantive matters. Gasperini v. Center for Human[]s[.], Inc., 518 U.S. 415, 427 (1996)." Eagle Tech., Inc. v. Expander Ams., Inc., No. 4:11CV1763 HEA, 2014 WL 636172, at *3 (E.D. Mo. Feb. 14, 2014), aff'd, 783 F.3d 1131 (8th Cir. 2015); accord Smith v. Toyota Motor Corp., 964 F.3d 725, 728 (8th Cir. 2020). Therefore, this Court applies federal law to Plaintiff's motion to amend and Missouri state law to any consideration of the elements required for or merits of the new claim against Pharma.[8]

---

[8] Plaintiff mentions in his motion to amend that he pursues his new claim against Pharma under Missouri law. Pharma did not specifically respond to this aspect of Plaintiff's motion to amend. It appears, therefore, that the parties do not dispute that Missouri law applies with respect to substantive matters in this case.

"In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." Stricker v. Union Planters Bank, N.A., 436 F.3d 875, 877 (8th Cir. 2006). When resolving "choice-of-law issues in tort actions, Missouri courts apply the 'most significant relationship' test." Id. at 878 (citation omitted). The "most significant relationship" test

> requires a court to consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." [Goede v. Aerojet Gen. Corp., 143 S.W.3d 14, 24] n. 6 [(Mo. Ct. App. 2004)] (quoting Restatement (Second) of Conflict of Laws § 145 (1971))[, abrogated on other grounds by Sanders v. Ahmed, 364 S.W.3d 195, 206-08 (Mo. 2012) (en banc)].

Id.; accord Winter v. Novartis Pharms. Corp., 739 F.3d 405, 410 (8th Cir. 2014). "More importantly, for personal injury actions, Missouri applies the law of the place of injury, unless some other state has a more significant relationship. . . . Missouri's formulation essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred." Winter, 739 F.3d at 410 (internal quotation marks and citations omitted). Here, the place of Plaintiff's injury is Missouri. Nothing of record supports a conclusion that a different

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a plaintiff may amend a complaint once as a matter of course within twenty-one days after serving the complaint or within twenty-one days after the defendant serves an answer or certain specified Rule 12 motions in response to the complaint. After that period of time, a plaintiff may seek leave to amend a complaint "only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Fed. R. Civ. P. 15(a)(2). When a plaintiff, however, seeks to amend a complaint after a court-ordered deadline for the amendment of pleadings "ha[s] passed, [the plaintiff] must show good cause" under Rule 16(b). Ellingsworth v. Vermeer Mfg. Co., 949 F.3d 1097, 1100 (8th Cir. 2020) (internal quotation marks and citations omitted). In relevant part, Rule 16(b)(4) states "[a court-ordered] schedule may be modified only for good cause and with the judge's consent."

If a court finds good cause for the post-deadline motion to amend under Rule 16(b)(4), the court then considers whether the amendment is proper under Rule 15(a)(2). See, e.g., Silva v. Metropolitan Life Ins. Co., 762 F.3d 711, 719-28 (8th Cir. 2014) (affirming the district court's finding that good cause under Rule 16(b)(4) existed for the post-deadline motion to amend and reversing the district court's finding that the proposed amendment was futile under Rule 15(a)(2)); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008) (stating that a district court may not consider a post-deadline motion to amend under Rule 15(a) without regard to Rule 16(b) and citing decisions from five other circuits requiring a showing of good cause under Rule 16(b) before a court considers whether the proposed amendment is proper under Rule 15(a)); Ball-Bey

---

state has a more significant relationship under the circumstances. The Court, therefore, finds that Missouri substantive law applies in this tort action.

v. City of St. Louis, No. 4:18cv1364 SPM, 2020 WL 2308418 (E.D. Mo. May 8, 2020) (finding good cause for the post-deadline amendment and then no futility in the proposed amendment); Mahnken v. Wright Med. Tech. Inc., 4:18cv02095 SRC, 2020 WL 255809, at *1 (E.D. Mo. Jan. 17, 2020) (in resolving a motion to amend filed after the amendment deadline, "Rule 16(b)'s good-cause standard applies and then Rule 15(a)'s 'when justice so requires' standard"); Blue Buffalo Co., v. Wilbur-Ellis Co., No. 4:14CV859 RWS, 2019 WL 2396590, at *1 (E.D. Mo. June 6, 2019) ("courts must first determine whether good cause exists" under Rule 16(b)(4) and then, if so, "consider whether amendment is proper under Rule 15(a)"). Under Rule 15(a)(2), "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," leave to amend a complaint is freely given in order to provide the plaintiff the opportunity to test the claim in the amended complaint on the merits. Foman v. Davis, 371 U.S. 178, 182 (1962) (addressing an earlier version of Rule 15(a) that stated leave to amend pleadings "shall be freely given when justice so requires").

A plaintiff does not, however, "have an absolute right to amend" under Rule 15's liberal standard. Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012) (internal quotation marks and citation omitted). A court may deny leave to amend under Rule 15(a)(2) when there is a showing of one of the following "compelling reasons:" "undue delay, bad faith[] or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Id. (internal quotation marks and citations omitted); accord Hillesheim v. Myron's Cards and Gifts, Inc., 897 F.3d 953, 955 (8th Cir. 2018) (a court may deny leave to amend pleadings "only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated" (internal quotation marks and citations omitted)).

B. Rule 16(b)(4)

Pharma opposes the filing of the third amended complaint on the ground Plaintiff has not demonstrated good cause under Rule 16(b)(4) for filing an amended complaint after the November 6, 2019, deadline for amending pleadings. In particular, Pharma urges "Plaintiff has not alleged a change in the law, the discovery of new facts, or some other change in circumstances that would support a showing of good cause." Additionally, Pharma contends that Plaintiff "does not identify any *new* discovery information obtained *after* the deadline to amend the pleadings had passed" (emphasis in original).

Plaintiff did not mention Rule 16 in his motion to amend. In reply to Pharma's opposition, Plaintiff briefly summarizes the chronology of his efforts between December 2018 and the end of June 2020 to obtain, through Pharma and the Missouri Department of Health and Senior Services ("DHSS"), records of individuals who had contact with Pharma's facility since January 2015 and tested positive for Hepatitis C.[9] Pl.'s reply at 1-2 [ECF No. 97]. Plaintiff also urges that he "did

---

[9] To counter Pharma's contention Plaintiff's motion is untimely, Plaintiff specifically states: "[w]hen [Pharma] refused production [of records regarding other individuals who had contact with Pharma's facility since January 2015 and tested positive for Hepatitis C], Plaintiff sought the records from the Missouri Department of Health [and Senior Services,] which objected claiming [in part] the records should be obtained from" Pharma. Plaintiff then sought production of the records from Pharma, which the Court ordered, see Order, dated June 12, 2020 [ECF No. 90]. Plaintiff asserts Pharma "waited until June 26, 2020, the very last day per the Court's deadline, to produce anything [and t]hen . . . produced redacted records of only one other individual who tested positive at the initial screening" (emphasis in original), so that individual was not a participant in a study. "Whether [that person] was a [Pharma] study participant on any other occasion is unknown and unknowable to Plaintiff because [Pharma] redacted his/her name and all contact information to deprive Plaintiff of a means to speak to him/her." Plaintiff challenges Pharma's redaction of the produced record based on the absence of a redaction provision in either the Court's recent order of production or the HIPAA-qualified protective order [ECF No. 91] (which had been proposed by Plaintiff and not opposed by Pharma or any Defendant) for the production of medical record-related information. In support of his request for Pharma's production of information regarding others having contact with Pharma's St. Charles facility since 2015 and testing positive for Hepatitis C, Plaintiff points to deposition testimony of the medical director at Pharma's St. Charles facility who testified: (1) there was at least one other person who tested positive for Hepatitis C "after a study" in 2018 and (2) "maybe two or three [individuals] per year [identified as having Hepatitis C] through [pre-study] screening." See Dr. Jordan dep. at 97-98 [ECF No. 97-1 at 3].

Plaintiff additionally provided with his reply an emailed letter, dated May 26, 2020, [ECF No. 08-2] that Plaintiff's attorney received from Pharma's attorney apologizing for "any delay" and stating her client had advised

not (and could not) know" earlier in these proceedings relevant information Pharma disclosed to Plaintiff's counsel from late May 2020 into June 2020 that influenced several allegations in the third amended complaint. In particular, Plaintiff urges his motion to amend is timely because he "did not (and could not) know" (1) of Pharma's "transfer of [requested] records to 'archived' until receipt of [the] May 26, 2020, email letter" and (2) that Pharma "would wait until June 26, 2020, to produce redacted records," when redaction was not expressly permitted by Court order.

To establish "good cause" under Rule 16(b)(4) for a post-deadline amendment of a pleading, the "primary measure" "is the movant's diligence in attempting to meet deadlines." Ellingsworth, 949 F.3d at 1100 (internal quotation marks and citation omitted). "Good cause may be shown by pointing to a change in the law, newly discovered facts, or another significant changed circumstance that requires amendment of a party's pleading." Id. While a change in the "factual or legal basis of [a plaintiff's] case" may demonstrate good cause for Rule 16(b)(4), a "change in litigation strategy" does not demonstrate "good cause." Id.

The record supports Plaintiff's position that he has made various efforts for over a year to obtain records of individuals who may have tested positive for Hepatitis C during their contact, since January 2015, with Pharma's St. Charles facility. The deposition testimony of that facility's medical director, Dr. Heather Jordan, supports the potential existence of such records. Moreover, discovery efforts of Plaintiff and Pharma have not been without dispute. Throughout those parties'

---

that: (1) "no staff . . . tested positive for Hepatitis C" and therefore it made "no submissions to the state" about staff members; and (2) they completed a report online from the Missouri [DHSS regarding the participant who tested positive in 2018] . . . and sent it to the St. Charles County Division of Public Health. All of their forms were sent to St. Charles County Public Health because the [Pharma] facility was located in St. Charles County." Pharma's counsel further stated in the letter, dated May 26, 2020, that Pharma "indicated they do not have access to the submission records as they have been 'archived,'" and counsel would advise Plaintiff's counsel when Pharma let her know what "archived" meant.

efforts to exchange and obtain discoverable information, the Court has conducted status conferences with counsel, entered more than one protective order, granted DHSS's motion to quash subpoena, and, after granting that motion, permitted Plaintiff to pursue efforts to obtain from Pharma the requested records not obtainable through DHSS.  Because Plaintiff relies in part in his June 2020 motion to amend and his proposed third amended complaint on the information his attorney did not receive from Pharma until this past May and June,[10] the Court concludes the record supports a finding that Plaintiff exercised the requisite diligence and demonstrated the good cause required by Rule 16(b)(4) to permit consideration of Plaintiff's motion to amend, even though it was filed after the November 6, 2019, deadline for the amendment of pleadings.  See CitiMortgage, Inc. v. Chicago Bancorp, Inc., No. 4:12CV246 CDP, 2013 WL 3338501, at *3 (E.D. Mo. July 2, 2013) (finding diligence for Rule 16(b)(4) when the "proposed amendments [were] based on newly discovered facts that were not discovered . . . until after the pleading-amendment deadline").  The Court, therefore, considers whether Rule 15(a)(2) supports the filing of Plaintiff's proposed third amended complaint.

    C.  Rule 15(a)(2)

        (1)  *Undue or unfair prejudice*

In opposing Plaintiff's motion, Pharma asserts it

> will be extremely prejudiced by the addition of th[e] new count because [Pharma] was not previously put on notice of the[] new allegations [and new theory of recovery for punitive damages, that were not previously pled] and does not have adequate time and opportunity to investigate and rebut the[] new claim[] in light of other discovery deadlines currently in place.

---

[10] In particular, Plaintiff points to his allegations that Pharma (1) "fail[ed] to preserve in a reproducible format reports of others who had tested positive for hepatitis C while working for [Pharma] as an employee, intern, participant, or applicant;" and (2) "transferred to 'archives' and claimed inability to produce records highly relevant to Plaintiff's claims."

Plaintiff does not address, in either his motion or his reply, Pharma's argument that it will suffer extreme prejudice if the Court permits the filing of Plaintiff's third amended complaint.

As stated earlier, undue (or unfair) prejudice to the nonmovant is one of the "compelling reasons" supporting the denial of a motion to amend under Rule 15(a)(2). Hartis, 694 F.3d at 948; accord Hillesheim, 897 F.3d at 955. "The burden of proof of prejudice is on the party opposing [the] amendment." Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001) (internal quotation marks and citation omitted).

"[W]hen late tendered amendments involve new theories of recovery and impose additional discovery requirements," there is "prejudice involved." Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998); see also Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380, 395 (8th Cir. 2016) (stating motions to amend a complaint "that would prejudice the nonmoving party by requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy are particularly disfavored" (internal quotation marks and citation omitted)). Importantly, however, a district court may exercise its discretion to grant the amendment and "extend discovery, grant a continuance, or require the moving party to compensate the opposing party for any losses caused by allowing the amendment." Bell, 160 F.3d at 455; see also Dennis v. Dillard Dep't Stores, Inc., 207 F.3d 523, 526 (8th Cir. 2000) (reversing a denial of leave to amend an answer filed approximately three months prior to trial upon finding "unfair prejudice would [not] have resulted . . . [because], although discovery had closed, the district court had discretion to reopen it for the limited purpose of exploring the additional defense" and noting the nonmovant's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading" (internal

quotation marks and citation omitted))); Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981) ("To the extent that some additional discovery may be necessary [due to the filing of an amended complaint], it is well within the district court's power to alleviate the resulting burden on the defendants by granting a continuance or compensating them for any loss occasioned by the plaintiffs' delay"). The district court's discretion to resolve a motion to amend a pleading includes "discretion to order [the movant] to pay any costs incurred by [the nonmovant] as a result of additional discovery." Dennis, 207 F.3d at 526. Furthermore, when a court concludes a non-movant is unduly or unfairly prejudiced by allowing the filing of an amended complaint, "that prejudice must be balanced against the hardship to the moving party if it is denied." Buder, 644 F.2d at 694–95 (concluding the plaintiffs suffered a "significant hardship" by being "denied a trial on the merits of their fraud claim" when the court denied leave to amend the complaint).

Under the circumstances, the Court concludes Pharma is unfairly or unduly prejudiced by allowing Plaintiff to file his third amended complaint in the absence of an extension of the discovery deadline to allow Pharma to engage in discovery regarding only the new claim. The added claim contains allegations that were not part of the prior complaint(s) and there is no indication of record that Pharma had, or could have had, notice that Plaintiff planned or intended to assert the new claim in the proposed third amended complaint. Conceivably, however, in light of the period of time until the May 2021 trial date, the Court could, without changing the trial date: (1) provide Pharma a period of time to engage in discovery regarding the new claim only, (2) require Plaintiff to pay Pharma's costs of such discovery, and (3) change the deadlines for the parties' ADR efforts and the filing of substantive motions. The Court is not, however, willing to do so without considering whether the proposed new claim is futile.

(2) *Futility*

As noted earlier, one of the "compelling reasons" permitting denial of an amendment under Rule 15 is futility of the amendment. Futile claims are those that "are duplicative or frivolous . . . or claims that could not withstand a motion to dismiss under Rule 12(b)(6)." Silva, 762 F.3d at 719 (internal quotation marks and citations omitted). "To survive a motion to dismiss [for failure to state a claim upon which relief can be granted under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at 719-20 (internal quotation marks) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). An amendment "is not futile" where the allegations "raise a right to relief above the speculative level" and are not just "labels and conclusions." Hillesheim, 897 F.3d at 957-58 (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A court considering a Rule 12(b)(6) motion to dismiss accepts as true all factual allegations in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

To ascertain whether the claim of outrage set forth in Count VII of the proposed third amended complaint states a claim plausible on its face, the Court must determine whether Missouri state law recognizes a tort claim of outrage and, if so, whether Plaintiff's allegations are sufficient to support such a claim. In this diversity case, the Court applies "Missouri law as declared by the State's highest court, the Supreme Court of Missouri." Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 728 (8th Cir. 2011) (internal citations omitted)). "If the Missouri Supreme Court has not addressed the issue before [the district court, that court] must ascertain what rule the Missouri Supreme Court would apply. . . . When determining what the Missouri Supreme Court would do, [the district court] often turn[s] to the decisions of the Missouri Court of Appeals for

guidance." Rucci v. City of Pacific, 327 F.3d 651, 652–53 (8th Cir. 2003) (internal citations omitted).

In Missouri, the tort of outrage is known as the tort of intentional infliction of emotional distress. Smith v. Standard Oil, Div. of Amoco Oil Co., 567 S.W.2d 412, 415 (Mo. Ct. App. 1978); accord Hampton v. Carter Enters., Inc., 238 S.W.3d 170, 172 n.1 (Mo. Ct. App. 2007) (noting the plaintiffs "denominated their cause of action as the 'tort of outrage,' but the proper name for the tort is intentional infliction of emotional distress"); Greco v. Robinson, 747 S.W.2d 730, 735 (Mo. Ct. App. 1988) (noting that intentional infliction of emotional distress is "sometimes referred to in cases as 'outrage' or 'outrageous conduct'"). The Missouri Supreme Court first recognized the cause of action in Pretsky v. Southwestern Bell Tel. Co., 396 S.W.2d 566 (Mo. 1965), abrogated in part to eliminate the requirement of a physical injury by Bass v. Nooney, 646 S.W.2d 765, 772-73 (Mo. 1983) (en banc) (discussing negligent infliction of emotional distress claim). See Nazeri v. Missouri Valley College, 860 S.W.2d 303, 316 (Mo. 1993) (en banc) (citing Pretsky, supra, when addressing the allegations needed to state an intentional infliction of emotional distress claim). To state a claim for intentional infliction of emotional distress,

> a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm. K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. banc 1996). The conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo. 1969) [(per curiam) (internal quotation marks and citation omitted)]. The conduct must be "intended only to cause extreme emotional distress to the victim." K.G., 918 S.W.2d at 799.

Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. 1997) (en banc) ("Gibson").

It is the court's role to determine in the first instance whether the defendant's alleged conduct is sufficiently extreme and outrageous to permit recovery for the intentional infliction of

emotional distress. Thornburg v. Federal Express Corp., 62 S.W.3d 421, 428 (Mo. Ct. App. 2001); see also Kampouris v. Saint Louis Symphony Soc'y, 52 F. Supp. 2d 1096, 1106-07 (E.D. Mo. 1999) ("The threshold question of whether the defendant's conduct was 'extreme and outrageous' is a question of law for the court" (citing J.R. v. P.B.A., 773 S.W.2d 235, 236 (Mo. Ct. App. 1989)), aff'd, 210 F.3d 845 (8th Cir. 2000), abrogated in part on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011). Put another way, "the court must determine whether an average member of the community upon learning of the facts alleged by [the] plaintiff would exclaim 'outrageous!'" Viehweg v. Vic Tanny Int'l of Mo., Inc., 732 S.W.2d 212, 213 (Mo. Ct. App. 1987); accord Thornburg, 62 S.W.3d at 428; Hendrix, 755 S.W.2d at 412.

"Missouri case law reveals very few factual scenarios sufficient to support a claim for the intentional infliction of emotional distress." Bailey v. Bayer CropScience L.P., 563 F.3d 302, 310 (8th Cir. 2009) (internal quotation marks and citation omitted); see Gibson v. Hummel, 688 S.W.2d 4, 7-8 (Mo. Ct. App. 1985) (listing cases in which Missouri courts have not found extreme and outrageous the conduct alleged to inflict emotional distress). While extreme and outrageous conduct is not readily susceptible to definition, the defendant's conduct must be more than malicious and intentional. See Polk v. INROADS/St. Louis, Inc., 951 S.W.2d 646, 648 (Mo. Ct. App. 1997); Viehweg, 732 S.W.2d at 213.

When allegations do not demonstrate "sufficiently outrageous" conduct by the defendant, the plaintiff has failed to state a claim for the intentional infliction of emotional distress. See, e.g., Pujols v. Pujols Fam. Found., No. 4:16-CV-1644 CAS, 2017 WL 4310436, at *9 (E.D. Mo. Sept. 28, 2017), aff'd, 721 Fed. Appx. 567 (8th Cir. 2018) (unpublished per curiam); S.C. v. Dirty World, LLC, No. 11-CV-00392-DW, 2011 WL 13334172, at *2 (W.D. Mo. Sept. 22, 2011). Additionally, a plaintiff fails to state an intentional infliction of emotional distress claim where there are no

allegations or inferences that the defendant's conduct was "intended solely to cause emotional harm." Stanley v. Grate, No. 06-752-CV-W-GAF, 2007 WL 9709970, at *4 (W.D. Mo. Jan. 9, 2007); accord Ealey v. Larkins, 4:18-CV-1593 RLW, 2019 WL 954813, at *5 (E.D. Mo. Feb. 27, 2019) (finding, in relevant part, that the plaintiff's allegations did not "plausibly state a claim for intentional infliction of emotional distress under Missouri state law" when the plaintiff did not allege and the alleged facts did not support "that [the] defendants' sole purpose in their purported conduct was to cause emotional distress to [the] plaintiff"); Young v. Bullock, 1:18CV102 HEA, 2019 WL 354874, at *5 (E.D. Mo. Jan. 29, 2019) (same); Potter v. Echele, 4:18-CV-148 CDP, 2018 WL 1872394, at *6 (E.D. Mo. Apr. 19, 2018) (same); Zink v. Lombardi, 12-04209-CV-C-BP, 2014 WL 11309998, at *8 (W.D. Mo. May 2, 2014) (finding the plaintiffs failed to state a claim for intentional infliction of emotional distress by failing to "sufficiently ple[a]d that [the d]efendants' sole intent in" engaging in the challenged conduct was "to inflict emotional distress"); Gibson, 952 S.W.2d at 249.

While Pharma's allegedly intentional conduct, accepted as true at this point, is alarming and may, to some extent,[11] demonstrate conduct considered unreasonably risky to individuals' health, the Court need not delve into whether the alleged conduct passes Missouri's "outrageous" test, i.e., is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" so that an average member

---

[11] Some of the allegations in proposed Count VII pertain to Pharma's recordkeeping or business practices and do not clearly pertain to intentional conduct that may cause Plaintiff emotional distress under the relevant circumstances. For instance, it is not clear that Pharma's alleged procurement of "cheap insurance," failure "to preserve video footage of [Plaintiff's] study groups," failure "to preserve in a reproducible format reports of others who had tested positive for hepatitis C," and "transfer[] to 'archives' [while] claim[ing] it [was unable to] produce records" highly relevant to Plaintiff's claims" support Plaintiff's proposed intentional infliction of emotional distress claim.

<-->

of the community upon learning of the facts alleged by Plaintiff would "'exclaim "outrageous!"'" As the Missouri Supreme Court stated in Gibson, supra, the plaintiff seeking relief for the intentional infliction of emotional distress must allege the challenged conduct was "intended only to cause extreme emotional distress to the victim." Gibson, 952 S.W.2d at 249 (internal quotation marks and citation omitted). In affirming the dismissal of such a claim for failure to state a claim, the Missouri Supreme Court held that the plaintiffs' "allegations d[id] not support the inference that the [defendant]'s sole purpose in its conduct was to invade the [plaintiffs'] interest in freedom from emotional distress." Id.

Similarly, here, Plaintiff has not set forth either any explicit allegation or any allegation from which may arise an inference that Pharma's sole intent in engaging in the alleged conduct was to cause Plaintiff severe emotional distress. To the contrary, Plaintiff's allegations explicitly state that Pharma engaged in the alleged conduct "in its quest to save money, avoid/reduce liability exposure, minimize its financial responsibility and/or make Plaintiff's ability to recover medically and/or financially more difficult [by engaging in the enumerated allegedly] outrageous acts thereby placing profits above safety and above human decency." Pl.'s proposed third am. compl. para. 22 [ECF No. 92-1]; see also id. para. 20. See, e.g., K.G., 918 S.W.2d at 799-800 ("The facts alleged will not support an inference that [the defendant's] sole purpose in manipulating [the victim's] genitalia with his mouth and fingers was to invade the [victim]'s interest in freedom from emotional distress. As alleged, [the] defendant's purpose for committing the offensive touching was sexual gratification"); Ealey, 2019 WL 954813, at *5 (finding, in relevant part, that the plaintiff's allegations did not "plausibly state a claim for intentional infliction of emotional distress under Missouri state law" when the plaintiff did not allege and the alleged facts did not support

- 19 -

"that [the] defendants' sole purpose in their purported conduct was to cause emotional distress to [the] plaintiff"); Young, 2019 WL 354874, at *5 (same); Potter, 2018 WL 1872394, at *6 (same).

Accordingly, the allegations in Count VII of Plaintiff's proposed third amended complaint fail to state an intentional infliction of emotional distress claim upon which relief can be granted. Therefore, the new claim against Pharma that would be added by the filing of Plaintiff's proposed third amended complaint (Count VII of that complaint) is futile.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to file third amended complaint [ECF No. 92] is **DENIED**. This lawsuit shall proceed on the claims Plaintiff set forth in the second amended complaint.

**IT IS FURTHER ORDERED** that the August 7, 2020 deadline for notifying the Court of the date, time, and place of the initial ADR conference is **EXTENDED to August 21, 2020**.

All terms and provisions of the Second CMO [ECF No. 63] and the Order Referring Case to ADR [ECF No. 18], as amended by this and prior Court Orders, remain in full force and effect.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of August 2020