# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

IAN WALLACE,                                    )
                                               )
                              Plaintiff,        )
                                               )
v.                                             )          Cause No. 4:18-cv-01859-PLC
                                               )
PHARMA MEDICA RESEARCH,                         )
INC., et al.,                                   )
                              Defendants.        )

## MEMORANDUM AND ORDER

This matter is before the Court on the "Daubert Motion to Strike Testimony and Opinions of Dr. Harry Hull" [ECF No. 102] filed by Defendants Pharma Medica Research, Inc. ("Pharma"), Tris Pharma, Inc. ("Tris"), Roxane Laboratories, Inc. ("Roxane"), Hikma Labs, Inc. ("Hikma"), and West-Ward Columbus, Inc. ("West-Ward") (collectively, "Defendants").  Plaintiff Ian Wallace opposes the motion.

This case arises from Plaintiff's infection with hepatitis C virus.  Plaintiff participated in medical research studies at Pharma's facility in St. Charles, Missouri from March 23, 2016 through April 23, 2016 and June 10, 2016 through June 14, 2016.  The studies, which were sponsored by Tris and Roxane,[1] required Plaintiff to undergo frequent blood draws, which were performed by Pharma staff.  In late June 2016, Plaintiff was hospitalized and diagnosed with acute hepatitis C.

---

[1] Plaintiff alleges that Roxane "has been succeeded by West-Ward . . . and/or by Hikma . . . ." [ECF No. 76 at ¶ 4.]

In his second amended complaint, Plaintiff alleges that he contracted the hepatitis C virus during the blood drawing process in one of the two studies at Pharma's facility.  [ECF No. 76.] Plaintiff brings claims of negligence and res ipsa loquitor against all Defendants.  [Id.]

Plaintiff designated Dr. Harry Hull, an epidemiologist, as one of Plaintiff's experts.  Dr. Hull opined "to a reasonable degree of medical and epidemiologic certainty" that:

1.  [Plaintiff] developed an acute hepatitis C infection with onset of symptoms sufficient to seek medical care on June 25, 2016.
2.  [Plaintiff] spontaneously cleared hepatitis C virus from his blood and does not have chronic hepatitis C infection.
3.  It is more likely than not that the source of [Plaintiff]'s hepatitis C infection is an unrecognized unsterile needlestick during monitoring while he was participating in drug studies at Pharma Medica Research, Inc. in St. Charles, Missouri during March, April, and June 2016.

Dr. Hull's report at 6 [109-2] and as supplemented [ECF Nos. 109-3, 109-4, 109-5].

Pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), Defendants move to exclude Dr. Hull's report and opinions "relating [to] the causation of Plaintiff's Hepatitis C."  Defendants argue Dr. Hull's report and opinions do not satisfy the reliability requirements set forth in Rule 702 and Daubert.

## I.      Legal Standard

Rule 702 governs the admission of expert testimony.  See Fed. R. Evid. 702; Hirchak v. W.W. Grainger, Inc., 980 F.3d 605, 608 (8th Cir. 2020).  "Under Federal Rule of Evidence 702, testimony in the form of an expert opinion must be 'based on sufficient facts' and 'help the trier of fact' by applying the expert's 'specialized knowledge' and 'reliable principles and methods.'" Hirchak, 980 F.3d at 608 (quoting Fed. R. Evid. 702).  See also Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (Rule 702 "codifies Daubert and its progeny").  "[T]he district court must … function as a gatekeeper who separates expert opinion evidence based on good grounds

from subjective speculation that masquerades as scientific knowledge." Adams v. Toyota Motor Corp., 867 F.3d 903, 916 (8th Cir. 2017) (quotation omitted).

While decisions concerning the admission of expert testimony "lie within the broad discretion of the trial court," Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003), "cases are legion that, correctly, under Daubert, call for the liberal admission of expert testimony." Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 562 (8th Cir. 2014). "An expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance for the jury." Synergetics, Inc. v. Hurst, 477 F.3d 949, 956 (8th Cir. 2007) (quotation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (quoting Daubert, 509 U.S. at 595).

## II.    Discussion

Defendants argue that Dr. Hull's opinion relating to the causation of Plaintiff's hepatitis C infection is unreliable because Dr. Hull:  (1) based his opinion on conjecture and improperly discounted other potential causes; and (2) is not qualified to render an opinion regarding hepatitis C.  [ECF No. 103.]  Plaintiff counters that Dr. Hull's education and experience qualify him as an expert and his methodology was sound.  [ECF No. 109]

### A.   Dr. Hull's Causation Opinion

Plaintiff retained Dr. Hull to render an opinion on the source of Plaintiff's hepatitis C infection.  According to his curriculum vitae, Dr. Hull earned his medical degree at Johns Hopkins University in 1973 and is a "[p]hysician epidemiologist with 40 years of experience in infectious disease control."  [ECF No. 109-1 at 1.]  He is licensed to practice medicine in Minnesota, certified

by the American Board of Pediatrics, and a fellow of the American Academy of Pediatrics.  [ECF No. 109-1 at 1-2.]  Dr. Hull has worked as an epidemiologist at the:  Centers for Disease Control and Prevention (CDC), New Mexico Health and Environment Department, and Minnesota Department of Health.  [Id. at 1.]  He also taught epidemiology at the University of Nevada School of Medicine, the University of Minnesota School of Medicine, and the University of Minnesota School of Public Health.  [ECF No. 109-2]  Dr. Hull's bibliography, which is attached to his curriculum vitae, lists 130 articles he authored or co-authored on topics including enteric diseases, poliomyelitis, measles, AIDS, and infectious diseases generally.  [ECF No. 109-1 at 4-10.]

Prior to completing his initial report, Dr. Hull reviewed various medical journal articles about hepatitis C, reviewed Plaintiff's medical records and information relating to medical research studies that Plaintiff screened for and/or participated in, and examined and interviewed Plaintiff.  [ECF No. 109-2.]  In his initial report, Dr. Hull provided a narrative summary of Plaintiff's medical research study participation for 2016.  [ECF No. 109-2].  In particular, Dr. Hull reported that Plaintiff participated in a Pharma drug study from January 12, 2016 to February 1, 2016.  He was screened on January 4, 2016, and found to have normal liver function, as well as negative tests for hepatitis C antibodies and drugs.  BioPharma screened Plaintiff for a study on February 1, 2016, and Plaintiff participated in that study from February 19 through 26, 2016.  [Id. at 2.]  The results of that screening were not available to Dr. Hull.  [Id.]

On March 2, 2016, Plaintiff underwent screening for "study protocol 2015-3952" at Pharma.  [Id.]  Plaintiff tested negative for drugs and "hepatitis C antibody," and his liver enzymes were normal.  [Id. at 2-3.]  Plaintiff participated in that study from March 18 through 26, 2016 and April 14 through 22, 2016.  [Id. at 2-3.]  During each of the two testing periods, Plaintiff was

repeatedly administered a test drug and underwent twenty-four blood draws.  [Id. at 3]  "On April 22, [Plaintiff's] liver enzymes were again normal."  Id.

Spaulding Medical screened Plaintiff for a medical research study on May 18 and 22, 2016.  [Id.]  Plaintiff's May 18 hepatitis C antibody test was negative and drug screens on both days were negative.  [Id.]  Plaintiff did not participate in that study (or in a study for MedPace in early May 2016, for which Plaintiff's May 3 screening "tests were normal").  [Id.]

Plaintiff underwent screening for "study protocol 2016-4109" at Pharma on May 25, 2016.  [Id.]  Again, his hepatitis C antibody and drug screens were negative, and his liver function was normal.  [Id.]  During two thirty-six hour periods beginning on June 4 and June 11, 2016, Plaintiff underwent twenty blood draws, with two additional blood draws over the next two days.  [Id.]  A post-study blood draw on June 14 revealed that Plaintiff's liver enzymes were slightly elevated, and repeat blood draws on June 20 and 24 showed that those levels continued to rise.  [Id.]  On June 25, Plaintiff became symptomatic and was hospitalized and diagnosed with acute hepatitis C.  [Id.]

In his initial report, Dr. Hull stated that:  "The symptoms of acute hepatitis C usually appear 2 – 12 weeks after exposure to the virus with an average of 7 weeks.  Rarely, symptoms appear as long as 26 weeks after exposure."  [Id. at 4]  "Based on the most common incubation period of hepatitis C," Dr. Hull opined that Plaintiff  "most likely acquired his hepatitis C between March 3, 2016 and June 12, 2016."  [Id.]

In reaching this conclusion, Dr. Hull addressed and ruled out other potential sources of Plaintiff's hepatitis C.  [Id. at 4-5]  Citing Plaintiff's denial of recreational drug use and his seventeen drug screens between July 2015 and June 2016, Dr. Hull found it "extremely unlikely that [Plaintiff] acquired his hepatitis C infection as a result of intravenous drug use."  [Id. at 5]  Dr.

Hull also noted that Plaintiff did not share razors or toothbrushes or live with anyone who had hepatitis C.  [Id.]  He discounted the possibility that Plaintiff acquired his hepatitis C sexually because Plaintiff's girlfriend, his only sexual partner in the six months prior to the onset of his illness, tested negative.  [Id.]  Dr. Hull further found that Plaintiff had not:  (1) undergone blood transfusions or organ transplants, (2) donated blood or plasma since 2010, and (3) acquired hepatitis C from his mother at birth.  [Id.]  Dr. Hull therefore excluded "all other common risk factors for acquiring hepatitis C infection."  [Id. at 6.]

Dr. Hull's report acknowledged that Plaintiff "was screened for and participated in other drug studies during the 6 months prior to the onset of his illness," but opined that Plaintiff "most likely … acquired his hepatitis C infection either during study 2015-3952 for which he had blood drawn 24 times during the period of April 14-22, 2016, or during study 2016-4109, for which he had blood drawn 22 times beginning June 4."  [Id. at 6]  Dr. Hull noted that Plaintiff "only participated in studies at [Pharma] during this time frame" and, based on the most common two- to twelve-week incubation period, it was "very unlikely that [Plaintiff] became infected with hepatitis C virus prior to March, 2016."  [Id.]

At Plaintiff's request, Dr. Hull reviewed additional medical records, testimony, and expert reports and supplemented his report three times, each time reaffirming his original conclusions.  [ECF Nos. 109-3, 109-4, 109-5]  First, Dr. Hull described Plaintiff's screening test results from the BioPharma study of February 2016, which confirmed that Plaintiff was not infected with hepatitis C or using drugs at that time.  [ECF No. 109-3]  Next, Dr. Hull considered Plaintiff's deposition testimony and the reports of Defendants' expert witnesses Nancy Erickson and Andrew Aronsohn, M.D.  [ECF No. 109-4]  Finally, Dr. Hull reviewed records of Plaintiff's screening for a study at Spaulding Clinical Research on May 18, 2016, which reflected he was negative for

hepatitis C antibody and drugs, as Dr. Hull stated in his initial report. [ECF No. 109-5]  In each supplemental report, Dr. Hull stated that the additional information did not alter his conclusion regarding the source of Plaintiff hepatitis C infection, which was "made to a reasonable degree of medical and epidemiological certainty."  [ECF Nos. 109-2, 109-3, 109-4, 109-5]  Dr. Hull's deposition testimony was consistent with his written reports.

B.  Dr. Hull's Qualifications[2]

Defendants acknowledge that Dr. Hull is "an epidemiologist with experience in infection disease control, food borne diseases, vaccine preventable disease and the epidemiology of infectious diseases," but they assert that he is unqualified to opine about the cause of Plaintiff's hepatitis C infection because he lacks experience diagnosing and treating hepatitis C.  [ECF No. 103 at 11-12]  Additionally, Defendants argue that Dr. Hull is not qualified to testify about the source of Plaintiff's hepatitis C because Dr. Hull:  has not completed a clinical rotation in adult medicine; is not licensed to practice medicine in Nevada, where he resides; has not authored any publications concerning hepatitis C; has no specialized education or training in hepatitis C; and has "zero experience with phlebotomy standards, the exact issue here."  [Id.]  In response, Plaintiff asserts that, with over twenty-five years' experience "in the practice, study, and teaching of epidemiology," Dr. Hull clearly satisfies the requirements of Daubert and Rule 702.  [ECF No. 709 at 17]

Federal Rule of Evidence 702 "only requires that an expert possess 'knowledge, skill, experience, training or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.'"  Robinson 447 F.3d at 1100 (quotation omitted).  "However, Rule 702 does require that the area of the witness's

---

[2] For ease of analysis, the Court addresses Defendants' arguments out of order.

competence matches the subject matter of the witness's testimony." Id. at 1101 (quotation omitted).   Significantly, "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Id. at 1100.

Dr. Hull is an epidemiologist with over forty years' experience practicing, studying, and teaching infectious disease control.  Dr. Hull has worked for the CDC in the United States and abroad and served as a state epidemiologist for Minnesota and New Mexico.  In his deposition, Dr. Hull explained that, as state epidemiologist, he "conduct[ed] surveillance for diseases," and advised medical licensing boards to "set[] limits on physicians who were infected with bloodborne diseases."  [ECF No. 109-6 at 7]  In regard to hepatitis C, Dr. Hull stated that, while he had not diagnosed or treated that particular disease, in his "role [ ] supervising the hepatitis C surveillance program at the – Minnesota [S]tate [H]ealth [D]epartment, [he] . . . was involved in …reviewing cases of hepatitis C to determine … if the[ patient reviewed] had hepatitis and where the likely source of infection was."  [ECF No. 109-6 at 7]

While Dr. Hull's prior research and scholarship has not focused on hepatitis C, Daubert does not require Dr. Hull to demonstrate a hepatitis C specialization to qualify as an expert.  See Robinson, 447 F.3d at 1101 ("Most courts have held that a physician with general knowledge may testify regarding medical issues that a specialist might treat in a clinical setting.").  Nor does Daubert require Dr. Hull to have diagnosed and treated hepatitis C to opine about the likely source of an infection.  See Clinton v. Mentor Worldwide LLC, No. 4:16-CV-319 CEJ, 2016 WL 7491861, at *4 (E.D. Mo. Dec. 30, 2016) ("A medical doctor does not need to have treated the specific disease at issue to opine on medical matters relating to that condition.").

As to Defendants' argument that Dr. Hull lacks expertise in the area of phlebotomy, the Court notes that he is testifying, as a causation expert, about the source of Plaintiff's infection, not

phlebotomy standards. "[T]he [c]ourt will not disqualify him for lacking expertise in an area unrelated to his expert testimony." Eubanks v. Cottrell, Inc., No. 05-CV-1361 JCH, 2007 WL 172566, at \*4 (E.D. Mo. Jan. 19, 2007) (citing Smith v. BMW N. Am. Inc., 308 F.3d 913, 919-20 (8th Cir. 2002)).

Dr. Hull is qualified by knowledge, skill, experience, and education to provide expert testimony about the transmission of hepatitis C and the likely source of Plaintiff's infection. These matters are within his realm of expertise as an epidemiologist. See, e.g., Robinson, 447 F.3d at 1100–01 (district court did not abuse its discretion in allowing a neurologist to testify about the cause of shoulder problems requiring surgery). To the extent that Dr. Hull lacks experience in the diagnosis and treatment of hepatitis C, this "go[es] to the weight of [his] testimony, not its admissibility." Id. at 1100. See also Klingenberg v. Vulcan Ladder USA, LLC, 936 F.3d 824, 828–29 (8th Cir. 2019); Emerson Electric Co. v. Suzhou Cleva Elec. Appliance Co., Ltd., No. 4:13-CV-1043 SPM, 2015 WL 5768572, at \*2 (E.D. Mo. Sep. 30, 2015). The Court therefore finds that Dr. Hull is qualified to provide opinions as to the cause of Plaintiff's hepatitis C infection.

C.   Dr. Hull's Methodology

Defendants contend that Dr. Hull's causation opinion is unreliable because it "is not based on sufficient facts or data, and is not the product of reliable principles or methods." [ECF No. 103 at 4.] More specifically, Defendants argue that Dr. Hull overlooked other potential sources of Plaintiff's infection and improperly credited Plaintiff's testimony and discounted that of Defendants' witnesses. Plaintiff counters that Dr. Hull's methodology was sound in that he applied his experience and training, performed independent research, "systematically and methodically

9

ruled out" possible alternative sources of infection, and reviewed numerous depositions, medical records, and medical research study records.  [ECF No. 109 at 18]

A court may assess the reliability of an expert's methodology by considering four nonexclusive factors:  (1) whether the theory or technique "can be (and has been) tested"; (2) whether the theory or technique "has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) whether the theory or technique has been generally accepted.   Daubert, 509 U.S. at 593–94.  Additional factors a court may consider when analyzing the reliability of an expert's methodology include "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." Lauzon, 270 F.3d at 687.

The Eighth Circuit has held that "[a]n expert opinion 'should not be excluded [simply] because' the expert 'failed to rule out *every* possible alternative,'" but "an expert opinion must account for 'obvious' alternatives." Hirchak, 980 F.3d at 608 (quoting Lauzon, 270 F.3d at 693) (alterations in original).  Furthermore, "mere disagreement with the assumptions and methodology used [by an expert] does not warrant exclusion of expert testimony."  David E. Watson, P.C. v. United States, 668 F.3d 1008, 1015 (8th Cir. 2012) (quoting Synergetics, Inc., 477 F.3d at 956).

Defendants argue that Dr. Hull's opinion is unreliable because he excluded the BioPharma and Spaulding studies as possible sources of Plaintiff's hepatitis C infection.  To the contrary, Dr. Hull considered the BioPharma and Spaulding studies and provided reasoned explanations for discounting each one as the source of Plaintiff's infection.  Dr. Hull acknowledged that, in February 2016, Plaintiff participated in a BioPharma study, which involved multiple needle sticks, but deemed it "very unlikely that [Plaintiff] became infected with hepatitis C virus prior to March,

2016." [ECF No. 109-2 at 6]  Dr. Hull also recognized that Plaintiff was screened for a Spaulding Medical study in May 2016 and the screening required blood sampling.  While he recognized that "[i]t only takes one contaminated injection" to become infected with hepatitis C, Dr. Hull eliminated Spaulding as the source of Plaintiff's infection because "during the [Pharma] studies, there were … multiple subjects, being examined at the same time, and so the opportunity for cross-contamination would have been far greater at [Pharma] than a single injection in the Spaulding [M]edical" study.  Dr. Hull dep. at 9 [ECF No. 109-6].

Defendants also contend that Dr. Hull failed to consider and rule out sexual partners and unsterile tattooing and piercing equipment as possible sources of Plaintiff's hepatitis C infection.  However, Dr. Hull stated in his report that:  (1) sexual transmission of hepatitis C was rare; and (2) Plaintiff's only sexual partner in the six months prior to onset of his illness was his girlfriend, whose hepatitis C virus and antibody tests were negative.  [ECF No. 109-2 at 5]  Based on these factors, Dr. Hull concluded that Plaintiff "did not acquire his acute hepatitis C sexually."  [ECF No. 109-2 at 5]  While Dr. Hull's report did not specifically rule out tattoos or piercings as the source of Plaintiff's infection, Dr. Hull testified in his deposition that he accepted Plaintiff's representation that he had no tattoos and the "only piercings he had were his ears dating several years back." [ECF No. 109-6 at 10]  An "expert's causation conclusion should not be excluded because he or she has failed to rule out *every* possible alternative cause." Lauzon, 270 F.3d at 693 (emphasis in original) (quoting Westberry v. Gislaved Gummi AB, 178 F.3d 257, 265 (4th Cir. 1999)).

Defendants further argue that Dr. Hull improperly accepted Plaintiff's representations that the atmosphere at the Pharma facility was chaotic and "completely discounted the testimony of [Defendants' witnesses] Dr. Heather Jordan, Dr. Shabaz Khan, and [ ] Nancy Erickson, [PBT,

(ASCP)]."[3]  [ECF No. 103 at 6]  More specifically, Defendants fault Dr. Hull for discounting:  Dr. Jordan's and Dr. Khan's testimony about the safety standards and quality control at the Pharma facility; and expert witness Erickson's testimony about the safety-shield needles used by Pharma phlebotomists and the improbability of drawing blood with a used needle. [ECF No. 103 at 6-7]

As a general rule, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."  David E. Watson, P.C., 668 F.3d at 1014 (quoting Nebraska Plastics, Inc. v. Holland Colors Ams., Inc., 408 F.3d 410, 416 (8th Cir. 2005)).  See also Bayes v. Biomet, Inc., No. 4:13-CV-800 SRC, 2020 WL 5594059, at *2 (E.D. Mo. Sep. 18, 2020). Defendants essentially ask the Court to usurp the jury's role by determining that their witnesses and experts are more reliable or credible than Dr. Hull.  However, "[t]he [c]ourt's gatekeeper role is more circumscribed; it does not weigh the strengths and weaknesses of competing expert evidence in deciding the more limited question of *admissibility*."  Damgaard v. Avera Health, 104 F.Supp.3d 983, 987 (D. Minn. 2015) (emphasis in original) (citing Johnson, 754 F.3d at 562).

Finally, Defendants claim that Dr. Hull's opinion was "merely speculation and conjecture" because he based it upon an inexact incubation period and could not identify the precise date on which the infection occurred.  [ECF No. 103 at 10]  "A certain amount of speculation is necessary, an even greater amount is permissible (and goes to the weight of the testimony), but too much is fatal to admission."  Clinton, 2016 WL 7491861, at *3 (citing Grp. Health Plan, Inc. v. Philip Morris USA, Inc., 344 F.3d 753, 760 (8th Cir. 2003)).

---

[3] Defendants mistakenly preface Nancy Erickson's name with the title "Dr."  [ECF No. 103 at 6.] According to Ms. Erickson's deposition, she is a phlebotomy technician certified by the American Society for Clinical Pathology.  [ECF No. 109-10 at 10]

Dr. Hull's opinion relies on more than mere speculation.  Applying his experience in epidemiological investigation and knowledge about hepatitis C, Dr. Hull considered the timing of the studies at Pharma in March, April, and June 2016, in relation to the manifestation of Plaintiff's symptoms in late June 2016.  As previously discussed, Dr. Hull also considered and ruled out alternative sources of Plaintiff's hepatitis C infection.  Based on the typical incubation period for hepatitis C, as well as the numerous and frequent blood draws performed during the studies at Pharma, Dr. Hull concluded that Plaintiff "more likely than not" became infected during one of the studies at Pharma during March, April and June 2016. Based on the record before the Court, the Court concludes that Dr. Hull did not base his opinion on mere speculation.[4]

## III.    Conclusion

For the foregoing reasons, the Court finds that the conclusions set forth in Dr. Hull's report, as supplemented, and opinions are sufficiently reliable to assist the jury in its determination of a disputed issue.  Defendants' assertions concerning flaws in Dr. Hull's methodology or underlying assumptions "are proper subjects for [Defendants'] own expert testimony and for thorough cross-examination before the trier of fact." Filbert v. Joseph T. Ryerson & Son, Inc., No. 4:10-CV-1189 JCH, 2012 WL 2154347, at *3 (E.D. Mo. 2012) (quotation omitted).  See also Lauzon, 270 F.3d at 695.

Accordingly, after careful consideration,

---

[4] In support of their claim that Dr. Hull based his opinion on speculation and facts not supported by the record, Defendants cite Cole v. Hormier Distrib. Co., 599 F.3d 856 (8th Cir. 2010).  There, the Eighth Circuit affirmed the district court's exclusion of an expert witness's testimony and damages report because, among reasons, the report was based upon the factually incorrect assumption that the plaintiff lost both distribution and dealership rights, when, in fact, only the distribution rights had been terminated. Id. at 865.  Unlike the defendant in Cole, Defendants have not demonstrated that Dr. Hull's opinion relied on any indisputably inaccurate assumptions.

**IT IS HEREBY ORDERED** that Defendants' motion to strike the testimony and opinions of Dr. Hull [ECF No. 102] is **DENIED**.


_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of December, 2020

14