## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| IAN WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case no. 4:18cv01859 PLC |
| | ) | |
| PHARMA MEDICA RESEARCH, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Tris Pharma's Inc.'s motion for summary judgment.  [ECF No. 114]  Plaintiff Ian Wallace opposes the motion.  [ECF No. 127]]  The parties submitted the same materials in support of their summary judgment positions.[1]  For the following reasons, the Court grants Tris Pharma's motion.[2]

### I.       Background

This case arises from Plaintiff's infection with hepatitis C.  Plaintiff claims that the infection was caused by blood draws he underwent while participating in two clinical studies at Pharma Medical Research, Inc.'s (PMR) medical research facility.  Tris sponsored one of those studies.

---

[1] Specifically, both Plaintiff and Tris submitted the:  transcript of the November 7, 2019 deposition of Shabaz Kahn, M.D.; transcript of the July 30, 2019 deposition of Heather Jordan, M.D.; and contract between Tris and PMR, titled "Master Service Agreement."  Plaintiff also submitted Tris's answers to interrogatories, a December 10, 2020 email from Plaintiff's counsel to Tris's counsel, and Protocol 2015-3952, which pertains to the Tris study in which Plaintiff participated that is at issue in this case.

[2] The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).  [ECF No. 14]

The undisputed record reveals the following.  In 2016, Plaintiff voluntarily participated in a study at PMR's St. Charles facility that was sponsored by Tris.  [ECF No. 116 at ¶ 7]  During the study, participants were subject to multiple blood draws.

PMR "worked on a contract basis with pharmaceutical companies to test and gather data for testing pharmaceuticals that the pharmaceutical companies wanted to market."  [ECF No. 116 at ¶ 13]  Dr. Shabaz Khan was PMR's vice president of clinical operations.  [Id. at ¶ 16]  Dr. Heather Jordan was a principal investigator at PMR's St. Charles facility from March 2015 to May 2019.  [Id. at ¶ 23]  Dr. Jordan's duties included ensuring each study assigned to her, including the ones in which Plaintiff participated, was conducted in accordance with the study's protocol.  [Id. at ¶ 24]

PMR conducted its studies pursuant to protocols, which "governed everything ranging from what medication to administer to he time a participant's blood was to be drawn and tested." [Id. at ¶¶ 14, 25]  PMR's scientific affairs and protocol-writing teams drafted protocols in accordance with Food and Drug Administration (FDA) guidelines and in consultation with the study sponsor.  [ECF Nos. 116 at ¶¶ 15; 116-3 at 5]  According to Dr. Khan's deposition testimony, a study protocol must comply with FDA guidelines, but "any other studies [sic] specific design and all, the sponsor will have an input.  It's their study."  [ECF No. 116-3 at 6 ]  Dr. Khan affirmed that the use of catheters rather than needles for blood draws would require the approval of both PMR's scientific affairs department and the study sponsor.  [Id. at 8]

Tris retained PMR to conduct clinical studies of its pharmaceutical products, and they entered into a Master Service Agreement ("Agreement").  [ECF Nos. 116 at ¶ 6, 116-2]  The Agreement set forth the parties' contractual rights and obligations. [ECF No. 116-2]  Among other things, the Agreement required PMR to:  provide written status reports as reasonably requested by

2

Tris; "perform the Services under the general direction of Tris' designated representative"; "assign to Tris all right, title, and interest" in "all data and Intellectual Property Rights" that PMR's personnel or subcontractors created, developed, or conceived; "maintain in strict confidence" all confidential information received from Tris or "of which [PMR] bec[ame] aware in connection with this Agreement"; permit Tris's representatives to examine or audit PMR's facilities, systems, equipment, and records; and maintain adequate insurance. [ECF No. 116-2 at §§ 2.2, 2.9, 8.1, 9.1, 10.5, 17.1]  The Agreement allowed PMR to "use subcontractors to perform part of the Services," but only if Tris approved and the subcontractor agreed to the terms contained in the Agreement. [Id. at § 2.6]  Tris also had the right to approve the personnel that PMR assigned to studies of Tris's medications.  [Id. at § 2.11]

Under a section entitled "Independent Contractor Status," the Agreement provided:

> It is understood and agreed that [PMR] is an independent contractor and will not have any rights to any of Tris benefits, nor for any purposes be deemed or intended to be an employee of Tris.  [PMR] agrees to make any payments or withholding required by the Internal Revenue Code of 1986, as amended, the regulations promulgated thereunder, social security and any related statute or regulations.

[Id. at § 11.1]  The Agreement further stated:  "[PMR] is not an agent of Tris and Tris is not an agent of [PMR] and neither party is authorized to bind the other party with respect to any third party."  [Id. at § 11.2]

Plaintiff filed a second amended complaint asserting claims of negligence (Count II) and *res ispsa loquitor* (Count V) against Tris.  [ECF No. 76]  Plaintiff premised these claims on an agency theory.  [Id.]  Specifically, Plaintiff alleged that:  (1) Tris "sponsored as master and PMR as agent a certain study at PMR's St. Charles, Missouri facility" in which Plaintiff participated; (2) Tris contracted with PMR "to test on humans a certain medications designed, manufactured, supplied, and created" by Tris; (3) Tris "controlled the actions of [PMR] or had the right to control

3

the actions of [PMR] in said study"; and (4) PMR was "acting as the agent for [Tris] in the scope of its employment by [Tris] for the aforesaid study." [ECF No. 76 at 1, 4, 8]  According to Plaintiff, Tris is therefore "responsible for [PMR's] actions during the study."  [Id. at 4, 8]

Tris moves for summary judgment on the ground that PMR was not Tris's agent and, therefore, "any claims of negligence cannot be imputed to Tris." [ECF No. 114 at ¶ 4]  In response, Plaintiff asserts that summary judgment is inappropriate procedurally and the evidence establishes the existence of an agency relationship between Tris and PMR.  [ECF No. 127]

## II.    Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013).  The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quotation omitted).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).  The court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), accord Tolan v. Cotton, 572 U.S. 650, 656 (2014) (per curiam) (quoting Anderson, 477 U.S. at 249).  "Credibility determinations, the weighing of

4

the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

In a diversity case, a federal court applies "federal law to matters of procedure, and state law to substantive matters. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996)." Eagle Tech., Inc. v. Expander Ams., Inc., No. 4:11-CV-1763 HEA, 2014 WL 636172, at *3 (E.D. Mo. Feb. 14, 2014), aff'd, 783 F.3d 1131 (8th Cir. 2015); accord Smith v. Toyota Motor Corp., 964 F.3d 725, 728 (8th Cir. 2020). Therefore, this Court applies Missouri state law to the agency claims at issue in this motion for summary judgment.[3]

## III.    Discussion

---

[3]  As the Court noted in its Memorandum and Order of August 2020, the parties do not dispute that Missouri law applies with respect to the substantive matters in this case. [ECF No. 108 at 7 n.8] "In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." Stricker v. Union Planters Bank, N.A., 436 F.3d 875, 877 (8th Cir. 2006). When resolving "choice-of-law issues in tort actions, Missouri courts apply the 'most significant relationship' test." Id. at 878 (citation omitted). The "most significant relationship" test

> requires a court to consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." [Goede v. Aerojet Gen. Corp., 143 S.W.3d 14, 24] n. 6 [(Mo. Ct. App. 2004)] (quoting Restatement (Second) of Conflict of Laws § 145 (1971))[, abrogated on other grounds by Sanders v. Ahmed, 364 S.W.3d 195, 206-08 (Mo. 2012) (en banc)].

Id.; accord Winter v. Novartis Pharms. Corp., 739 F.3d 405, 410 (8th Cir. 2014). "More importantly, for personal injury actions, Missouri applies the law of the place of injury, unless some other state has a more significant relationship. . . . Missouri's formulation essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred." Winter, 739 F.3d at 410 (internal quotation marks and citations omitted). Here, the place of Plaintiff's injury is Missouri. Nothing of record supports a conclusion that a different state has a more significant relationship under the circumstances. Missouri substantive law therefore applies in this tort action.

Tris claims that it is entitled to summary judgment because PMR, the party allegedly responsible for Plaintiff's injury, was not Tris's agent.  [ECF No. 114]  More specifically, Tris asserts that Plaintiff failed to plead, much less prove, the elements required to establish an agency relationship between Tris and PMR.

Plaintiff counters that summary judgment is inappropriate because Tris's "motion seems to be an attack on the sufficiency of the complaint allegations rather than … a motion which posits that there is no genuine factual dispute."  [ECF No. 127 at 3]  Plaintiff further asserts that Tris is not entitled to summary judgment because:  (1) Tris failed to present any affidavits or testimony in support of its motion; and (2) evidence in the summary judgment record supports the existence of an agency relationship between Tris and PMR.  Finally, Plaintiff requests leave to amend the second amended complaint "[i]n the event the Court finds a pleading deficiency[.]"  [Id. at 7]

"Agency is the fiduciary relation that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Blanks v. Fluor Corp., 450 S.W.3d 308, 378 (Mo. App. 2014) (quoting Restatement Third, Agency § 1.01).  See also State ex rel. Ford Motor Co. v. Bacon, 63 S.W.3d 641, 642 (Mo. banc 2002).  A principal is typically liable for the acts of its agent.  Bacon, 63 S.W.3d at 642; McAllister v. St. Louis Rams, LLC, No. 4:16-CV-172 SNLJ, 2018 WL 1299710, at *3 (E.D. Mo. Mar. 13, 2018).  To prove the existence of an agency relationship, a plaintiff must show that:  (1) the agent had the authority "to alter legal relations between the principal and a third party"; (2) the agent was a "fiduciary with respect to matters within the scope of the agency"; and (3) the principal had "the right to control the conduct of the agent with respect to matters entrusted to the agent."  Bacon, 63 S.W.3d at 642.  The absence of any of these three elements defeats the purported agency relationship.  Id.

6

"Whether an agency relationship exists is generally a factual question for the jury."  West v. Sharp Bonding Agency, Inc., 327 S.W.3d 7, 11 (Mo. App. 2010).  "However, 'this relationship is a question of law for the court to determine when the material facts are not in dispute, and only one reasonable conclusion can be drawn from the material facts.'"  Id. (quoting Ritter v. BJC Barnes Jewish Christian Health Sys., 987 S.W.2d 377, 384 (Mo. App. 1999) (internal quotation omitted)).  See also Weitz Co. v. MH Wash., 631 F.3d 510, 522 (8th Cir. 2011) ("[W]hen the facts are undisputed and only one reasonable conclusion can be drawn from them," the existence of a principal-agent relationship "is a question of law.").

In his second amended complaint, Plaintiff alleged that Tris was liable for PMR's negligence because Tris "controlled the actions of [PMR] or had the right to control the actions of [PMR] in [the clinical] study" and was therefore PMR's principal.  [ECF No. 76 at 4, 8]  In regard to Tris's alleged control over PMR, Plaintiff stated that Tris had the right to:

> visit PMR's facility to assure compliance with [Tris's] instructions, policies, rules, protocols, and guidelines; monitor PMR's conduct; request all information from PMR during the study; require reports from PMR; require audits; require quality assurance and quality control systems; require specific testing procedures including blood draws; regulate meal and sleep times of study participants; and all other restrictions set forth in the aforesaid study guidelines.

[Id.]  Plaintiff also averred that Tris required PMR to carry insurance for study participants.  [Id.]

As Tris correctly points out in its motion for summary judgment, Plaintiff's allegations relate solely to the third element of an agency relationship – namely, the principal's right to control the agent.  Plaintiff alleged no facts supporting the existence of either (1) PMR's authority to alter legal relationships between Tris and third parties or (2) a fiduciary relationship between PMR and Tris.  The right to control the alleged agent is not sufficient to establish an agency relationship.  See, e.g., Bacon, 63 S.W.3d at 642.

7

Plaintiff does not dispute Tris's assertion that he failed to allege the first and second elements of an agency relationship between Tris and PMR.  Rather, without citing supporting Eighth Circuit or United States Supreme Court case law, Plaintiff argues that a defendant may not base a motion for summary judgment on pleading defects.  Rule 56(c) provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials….

Fed. R. Civ. P. 56(c)(1)(A).  Here, Tris relies on the pleadings, as well as the Agreement and the depositions of PMR's employees, to establish that there is no genuine issue of material fact.  When a plaintiff's pleadings and summary judgment materials fail to present facts demonstrating an essential element of his claim, summary judgment is appropriate.  See, e.g., Clark v. SL Western Lounge, LLC., 4:18-CV-1223 JCH, 2019 WL 6893040, at *3–4 (E.D. Mo. Dec. 18, 2019).

Plaintiff also argues that Tris's motion for summary judgment must fail because Tris presented no proof, such as affidavits or testimony, to support its position that PMR was not its agent.  [ECF No. 101 at 7]  However, a nonmoving party must substantiate allegations with sufficient probative evidence that would allow a finding in his favor.  Frevert v. Ford Motor Co., 614 F.3d 466, 473–74 (8th Cir.2010).  "[A] movant will be entitled to summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Bedford v. Doe, 880 F.3d 993, 996 (8th Cir. 2018) (quoting Celotex, 477 U.S. at 323).  The existence of an agency relationship between Tris and PMR is essential to Plaintiff's negligence and *res ipsa loquitor* claims against Tris.  As such, Tris is entitled to summary judgment if the pleadings and summary judgment record do not make a showing sufficient to establish this relationship or to establish a

dispute of material fact regarding the existence of such a relationship.  Tris's alleged failure to submit affidavits or testimony does not preclude summary judgment.[4]

Finally, Plaintiff opposes Tris's motion on the ground that evidence in the summary judgment record establishes the three elements of an agency relationship between Tris and PMR. In regard to the first element, Plaintiff maintains that the Agreement authorized PMR to alter Tris's legal relationships because it:  allowed Tris access to PMR's facility to observe testing and review records; required PMR to obtain insurance; "obligated PMR to adhere to procedures approved by Tris, along with any other written instructions [Tris] provided"; and required PMR to perform its contractual obligations under the general direction of Tris's designated representative.  [ECF No. 127 at 5]  Additionally, the Agreement required PMR to include in any third party contracts the same terms set forth in the Agreement, and it prohibited PMR from delegating its obligations to any third party without Tris's approval.  [Id. at 5-6]   Finally, Plaintiff points to Dr. Khan's testimony that Tris "had the right to require the use of catheters rather than needles" for blood draws performed in its clinical studies.  [Id. at 5]

---

[4] According to Plaintiff, Tris's motion for summary judgment "seems to be illustrative of forbidden summary judgment motions which a defendant files simply to force a plaintiff to map out all their evidence before trial or risk dismissal."  [ECF No. 127 at 2]  In support of his position, Plaintiff cites Goka v. Bobbit, 862 F.2d 646 (7th Cir. 1988).  To the extent this Court should consider Seventh Circuit case law, Goka is distinguishable and not persuasive under the circumstances. There, the defendant prison guards moved for summary judgment on the *pro se* inmate's section 1983 claims, claiming that there were no material factual disputes, even though they were aware of evidence to the contrary.  Id. at 650.  Reversing the district court's entry of summary judgment for the defendants, the Seventh Circuit reasoned that a party "defeats th[e] purpose" of Rule 56 when it "has obtained knowledge through the course of discovery … that a material factual dispute exists and yet proceeds to file a summary judgment motion, in hopes that the opposing party will fail or be unable to meet its burden in responding to the motion[.]"  Id.  Unlike the parties in Goka, Plaintiff is represented by counsel and Tris does not ignore evidence that is "directly and materially inconsistent" with the material facts upon which it relies.

Based on its review, the Court finds that the Agreement evidences Tris's intention to retain control over the testing of its pharmaceutical products by, among other things, overseeing PMR's work and limiting PMR's ability to subcontract out its duties and obligations under the agreement. The Agreement also reflects Tris's intent to protect its confidential information and enjoy the benefits of any intellectual property flowing from the work PMR performed under the agreement. However, nothing in either the Agreement or the other evidence of record suggests PMR had the authority to alter Tris's legal relationships with third parties.  See, e.g., McKeage v. Bass Pro Outdoor World, LLC, No. 12-3157-CV-S-GAF, 2015 WL 2093126, at *7 (W.D. Mo. May 5, 2015) ("While Plaintiffs have put forth some evidence regarding the alleged principals' abilities to control the alleged agent, no evidence or arguments have been made that [the alleged agent] in any way had the power to alter the legal relationships between [the alleged principals] and their customers."); Hagale Indus., Inc. v. Lands' End, Inc., No. 3474-CV-S-4-ECF, 2002 WL 35646232, at *7 (W.D. Mo. Oct. 29, 2002) (evidence that the defendant limited the plaintiff's ability to subcontract or use new facilities without the defendant's approval "does not even raise a question as to whether [the defendant] had the power to bind [the plaintiff] in legal matters, or vice versa."). Indeed, the Agreement expressly stated that PMR "is not an agent of Tris and Tris is not an agent of [PMR] and neither party is authorized to bind the other party with respect to a third party." [ECF No. 116-2 at § 11.2]

In the event the Court "finds a pleading deficiency," Plaintiff requests leave to amend his second amended complaint.  [ECF No. 127 at 7]  "[A] motion for leave to amend filed outside the district court's Rule 16(b) scheduling order requires a showing of good cause."  Kmak v. Am. Century Companies, Inc., 873 F.3d 1030, 1034 (8th Cir. 2017) (alteration in original) (quotation omitted).  "Good cause may be shown by pointing to a change in the law, newly discovered facts,

or another significant changed circumstance that requires amendment of a party's pleading." Ellingsworth v. Vermeer Mfg. Co., 949 F.3d 1097, 1100 (8th Cir. 2020).  However, "[t]he primary measure of good cause is the movant's diligence in attempting to meet deadlines."  Id. (quoting Albright v. Mountain Home Sch. Dist., 926 F.3d 942, 951 (8th Cir. 2019)).  Whether to grant a motion for leave to amend is "left to the sound discretion of the district court."  Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380, 394 (8th Cir. 2016) (quotation marks and citation omitted).

Plaintiff has not presented a change in the law, newly discovered facts, or another significant changed circumstances.  Nor has Plaintiff acted diligently in seeking to amend the complaint to properly plead his agency theory.  See, e.g., Ellingsworth, 949 F.3d at 1100 (district court properly denied the plaintiff's request to amend the complaint to add an agency claim where litigation was at an "advanced stage" and "no new facts supporting an agency liability against [the defendant] had come to light.").  The deadline for amending the complaint expired over fourteen months ago, and the Court has already granted Plaintiff leave to amend the complaint on two previous occasions.  Given the present posture of this case (summary judgment motions filed and three months remaining until trial) and Plaintiff's failure to show good cause, the Court denies Plaintiff's request for leave to amend the second amended complaint.  See, e.g., Hammer v. City of Osage Beach, Mo., 318 F.3d 832, 844-45 (8th Cir. 2003) ("district court did not abuse its discretion in denying [the plaintiff's] second motion for leave to amend his complaint ... [where the plaintiff] filed his second motion to amend nearly fifteen months after the filing of his original complaint ... and the [defendant] had moved for summary judgment on the pleaded theories.").

## IV.    Conclusion

Because Plaintiff neither pleaded facts nor presented evidence demonstrating that PMR had the authority to alter legal relationships between Tris and third parties, Plaintiff failed to establish the existence of an agency relationship between Tris and PMR.[5]  See McKeage, 2015 WL 2093126, at *7.  Tris is entitled to judgment as a matter of a law, and the Court therefore grants Tris's motion for summary judgment.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Tris's motion for summary judgment [ECF No. 114] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Counts II and V against Tris are **DISMISSED with prejudice**.

**IT IS FINALLY ORDERED** that Plaintiff's request to amend the second amended complaint is **DENIED**.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of February, 2021

---

[5] Where a plaintiff fails to either allege facts or present evidence demonstrating the first element of an agency relationship under Missouri law, a court need not consider the other elements.  See Affordable Communities of Missouri v. Federal Nat. Mortg. Ass'n, 714 F.3d 1069, 1074 (8th Cir. 2013).

12